[S. F. No. 14111. In Bank.—February 25, 1931.]

PACIFIC INDEMNITY COMPANY (a Corporation), Petitioner, v. JOHN S. MYERS, as City Controller, etc., et al., Respondents; COUNTY OF LOS ANGELES, Intervener.

Holbrook, Taylor, Tarr & Horton for Petitioner.

Erwin P. Werner, City Attorney, Frederick Von Schroder, Assistant City Attorney, and Jerrell Babb, Deputy City Attorney, for Respondents.

Everett W. Mattoon, County Counsel, and S. V. O. Prichard and Robert A. Cushman, Deputies County Counsel, for the County of Los Angeles, Intervener and *Amicus Curiae* on Behalf of Respondents.

SHENK, J.—This is a proceeding in *mandamus* to compel the controller and treasurer respectively of the city of Los Angeles to draw a warrant for and pay to the petitioner the principal amount theretofore paid by the petitioner in satisfaction of a judgment on a forfeited bail bond entered against the petitioner pursuant to sections 1305 and 1306 of the Penal Code. The matter is submitted on a

general demurrer to the petition and briefs filed by the petitioner and by *amicus curiae*, the county of Los Angeles.

It appears from the petition that on or about the twenty-ninth day of April, 1929, there was pending in the municipal court of the city of Los Angeles a criminal proceeding entitled, "The People, etc., *v.* Charles F. Clark", wherein the defendant was charged with a violation of the Wright Act, a misdemeanor; that the defendant therein had entered a plea of not guilty and was admitted to bail in the sum of $1700; that the petitioner executed a bail bond in the sum required and the defendant was released from custody pending his trial; that when the cause was regularly called for trial on May 21, 1929, the defendant did not appear and his bail was declared forfeited; that on September 16, 1929, ninety days having elapsed from and after the declaration of forfeiture, the city prosecutor appeared before the court and upon a sufficient showing and motion a summary judgment was entered against the surety; that thereafter on January 10, 1930, the surety paid the principal amount of the bond and interest and the same was deposited by the clerk of the court with the treasurer of the city; that within one year after the entry of the summary judgment, solely through the efforts of and at the sole expense of the petitioner herein, the defendant Charles F. Clark was returned to the custody of the chief of police of said city and said defendant was on August 11, 1930, duly and regularly convicted of the highest offense charged against him in the complaint; that thereafter, on August 26, 1930, pursuant to notice, the petitioner moved the court for an order to refund to the petitioner the principal amount of said bond pursuant to section 1306 of the Penal Code; that concurrently with said notice there was presented to the court the affidavit of the attorney-in-fact of the petitioner to the effect that the absence of the defendant Clark had not been with the connivance of the petitioner; that upon this notice and showing the court entered an order requiring the respondent controller herein to draw his warrant on the city treasurer in the sum of $1700 payable to the petitioner and that the respondents herein, after demand duly made, have refused to comply with said order of court, basing their refusal on the alleged unconstitutionality of certain provi-

sions of the next to the last paragraph of said section 1306 of the Penal Code.

Said section 1306 contains the following final paragraphs:

"Payments made to a city, city and county, or county, by reason of a summary judgment shall be paid into a bail bond trust fund in the treasury of such city, city and county, or county, and properly designated with the title and number of the criminal action out of which such judgment arose. If at any time within one year after entry of such judgment the defendant in the criminal action is returned into custody and is subsequently convicted at any time of the highest offense charged in the complaint, information or indictment upon which such defendant was admitted to bail, the principal amount of such judgment, less all charges resulting from the pursuit, capture and return of the defendant, including rewards paid, shall be repaid, in the same manner as are all other payments to such surety; provided, that the surety file with his application for refund under the provisions of this section an affidavit that the absence of the defendant was not with his connivance. Such payment is hereby made a proper charge against such trust fund account in the treasury of any city, city and county, or county. The board of supervisors or other legislative body of the city, city and county, or county shall provide by resolution for the maintenance of records in the appropriate offices showing the amount of disbursements by said city, city and county, or county, resulting from the pursuit, capture and return of the defendant, including payment of rewards, and shall provide for a report thereon to the treasurer of the city, city and county, or county, within thirty days after the return to custody of such defendant.

"If the defendant is not so returned within one year after the entry of the summary judgment, the amount of said judgment shall thereupon be deposited in the general fund of the city, city and county, or county, and all liability for the return thereof shall terminate."

It is contended that the foregoing portion of section 1306 is in contravention of section 1 of the fourteenth amendment to the federal Constitution providing that no state shall deny to any person within its jurisdiction the equal protection of the law, section 11 of article I of the state

Constitution, providing that all laws of a general nature shall have a uniform operation, section 21 of article I providing that no citizen, or class of citizens, shall be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens, section 25 of article IV providing that the legislature shall not pass local or special laws in any of the following cases, that is to say, "twenty-sixth, remitting fines, penalties, or forfeitures, thirty-third, in all cases where a general law can be made applicable", and section 31 of article IV prohibiting the legislature from authorizing any gift of public money.

In view of these contentions it is well to note the various statutory enactments on the subject of discharge of bail and forfeiture. From 1905 until 1927 section 1305 of the Penal Code provided that if, within twenty days after the entry in the minutes of the court of the order of forfeiture of the bail, "the defendant or his bail appear and satisfactorily excuse his neglect", the court might direct the forfeiture to be discharged upon such terms as appeared to be just. During the same period of time section 1306 of the same code provided that if the forfeiture be not discharged as provided in section 1305 the district attorney might, within twenty days after such forfeiture, proceed by action against the bail upon the undertaking. In 1927 section 1305 was amended (Stats. 1927, p. 1386), so as to enlarge the time from twenty to ninety days for the return of the defendant after the declaration of forfeiture, and a discharge of the forfeiture upon a satisfactory showing of excuse from neglect on the part of the defendant and nonconnivance on the part of the bail. This amendment was construed by this court to require a concurrence of excusable neglect and nonconnivance before the bail was entitled to apply for a discharge of the forfeiture. (*Seaboard Surety Corp.* v. *Municipal Court,* 208 Cal. 596 [283 Pac. 289].)

Section 1306 was also amended in 1927 (Stats. 1927, p. 1385), to provide as follows:

"When any bond is forfeited, if the court which has declared the same forfeited has civil jurisdiction to render judgment in an action arising upon a contract of similar nature and amount ninety days after such forfeiture, if same has not been set aside, it shall enter a summary judgment against each bondsman named in such bond in the amount

for which such bondsman shall have bound himself; if the court declaring such forfeiture has not jurisdiction to give judgment in an action arising upon a contract of similar nature and amount, said court ninety days after such forfeiture, if the same has not been set aside, shall deliver to the district attorney of the county in which said court is located said bond, together with a certified copy of its order ·declaring the same forfeited, and immediately thereafter said district attorney must file said bond and said certified copy of forfeiture in a court having jurisdiction to render judgment in an action arising upon a contract of similar nature and amount. The court in which said bond and certified copy of forfeiture shall be so filed shall forthwith enter a summary judgment against each bondsman named in such bond in the amount for which said bondsman shall have bound himself.

''A dismissal of the indictment or information after the default of the defendant shall not release or affect the obligation of the bail bond or undertaking.

''Within five days after said judgment becomes final the district attorney or other civil legal adviser of the board of supervisors shall demand immediate payment of said judgment. If the judgment remains unpaid for a period of ten days after demand has been made, he shall forthwith cause a writ of execution to issue and be levied upon the property of the judgment debtor and shall take any other steps necessary to collect said judgment.''

█ Section 1305 was not amended in 1929, but in that year section 1306 was amended (Stats. 1929, p. 1872), by adding thereto the final paragraphs first above quoted. A consideration of both sections is appropriate in arriving at the legislative intent in dealing with the subject of discharge of bail and forfeitures. (*Seaboard Surety Co.* v. *Municipal Court, supra.*) It was the obvious intention of both sections to provide some relief to the bail after forfeiture upon return of the defendant to custody. It is therefore pertinent to inquire what relief has been and what relief has not been accorded the bail and whether constitutional requirements have been observed as between bail under the same circumstances.

Under section 1305, as above noted, the bail may be discharged if the defendant is returned within ninety days

and a showing is made excusing the defendant's neglect and of nonconnivance on the part of the bail, whether or not the defendant is convicted. Under section 1306 the bail is sought to be relieved in the absence of a satisfactory excuse on the part of the defendant and upon an *ex parte* showing of nonconnivance on the part of the bail, but the defendant must be returned within one year and be convicted of the highest offense of which he was charged. In the one case excuse of the defendant and nonconnivance of bail must concur. In the other the excuse or the neglect of the defendant is not required. On what ground such a refinement in the showing favorable to one bail and not to the other can be made is difficult to discover and none has been suggested.

Under neither section is any relief from forfeiture accorded cash bail or bail furnished after conviction. Cash bail, it is argued by the petitioner, may properly be excluded from consideration for the reason that as between the state and the defendant the cash bail is deemed to be the defendant's personal property (*Mundell* v. *Wells*, 181 Cal. 398 [7 A. L. R. 383, 184 Pac. 666]), and a return of forfeited cash bail might be deemed a reward to the defendant arising out of his own wrong. But a defendant released on his own cash bail may be innocent of any wrongdoing. His absence may be entirely excusable, yet he is afforded no relief under section 1306. Furthermore the bail, other than cash bail, furnished after conviction and to which the court has decided the defendant is entitled pending appeal, is accorded no relief whatever from forfeiture. It is no answer to say that bail before conviction in certain cases is a matter of right under the Constitution while bail on appeal is a matter of right only in other specified cases and in still others is discretionary with the court under the statute. (Pen. Code, sec. 1272.) In either or any case the bail is in accordance with law. Bail furnished after conviction was accorded the same consideration under the statutes from 1872 to 1929 as bail furnished before conviction. No sufficient reason appears why the bail in the one case should be entitled to relief and be denied it in the other.

It also appears that under the amendment in 1929 of section 1306 the defendant must be convicted of the highest offense charged before relief from forfeiture may be

granted. It is argued by the petitioner that this is a valid classification for the reason that the showing thus required insures that the public interest has not been prejudiced by the absence of the defendant when otherwise the public interest would be prejudiced if the defendant is acquitted or is convicted of a lesser offense or is dismissed. It is true that a delay in bringing a defendant to trial often results in a loss of evidence or a failure of justice for other reasons. But it cannot be said that the public interest is not as often subserved by the acquittal of the defendant found to be innocent as by conviction of a guilty one.

■ The petitioner insists that the amendment of 1929 is valid because, when viewed in its proper light, it is not a provision for the relief of the bail after forfeiture but in reality is a public aid statute in the nature of offering a reward to an ex-judgment debtor, and that the reward is not obtainable until after conviction of the highest offense, just as under section 1547 of the Penal Code the right to the reward is conditioned upon the conviction of the defendant. But when the amendment of 1929 is considered in the nature of a reward, the following curious situation develops: The right to the reward is not available to the person who returns the defendant unless that person happens to be the ex-judgment debtor. It therefore strikingly appears that the former bail and now ex-judgment debtor is entitled to the reward notwithstanding he has done nothing whatsoever to bring about the return of the defendant. In such case the payment of the money is not a reward for services rendered but is clearly a gift of public moneys in contravention of section 31 of article IV of the Constitution.

■ Therefore, considered as a measure for the relief of bail after forfeiture the amendment of section 1306 in 1929 attempts to classify those who furnish a bail bond before conviction and to afford them relief and those who furnish a bail bond after conviction and to deny them any relief. The contract of bail is essentially the same in both cases, namely, an undertaking that if the defendant does not appear when required the amount of the bond shall be forfeited. No good reason appears why one should be favored as against the other. We fail to discover any natural, intrinsic, or constitutional distinction between those favored and those disfavored. ■ Again, as has been seen, we

have an attempted classification of those who furnish bail for a defendant who is subsequently convicted of the highest offense charged, and who are favored, and those who furnish bail for a defendant who is subsequently convicted of a lesser offense or who is acquitted or dismissed. All of which we deem to be contrary to the provisions of the Constitution requiring uniformity of operation of the statute and prohibiting the granting of privileges to one class of citizens not granted to others upon similar terms.

Considered as an offer in the nature of a reward, as contended for by the petitioner, we find set apart as the parties solely entitled to the reward those who are ex-judgment debtors, regardless of whether they have effected or contributed to the return of the absconding defendant, contrary to the constitutional provisions prohibiting special laws in favor of a particular class arbitrarily selected from those maintaining the same relation to the subject of the law and prohibiting special laws remitting penalties and forfeitures.

It is contended by the petitioner that neither the respondents herein are nor the county of Los Angeles appearing as *amicus curiae* is in position to raise the question of the unconstitutionality of section 1306, for the reason, it is argued, that neither the city nor the county are injured but in fact are benefited by the statute even if the same be unconstitutional. In this connection the petitioner relies on the general rule that one not within the class whose constitutional rights are invaded by an alleged discrimination cannot complain and many authorities are cited in support of the general rule. Counsel for the petitioner, however, do not dispute the existence of the rule, referred to by both parties as an exception to the general rule, that when no member of the injured class can complain the question may be raised by anyone whose interests are affected. But it is insisted that the so-called exception to the general rule is not here applicable. We think that it is, for several reasons. First, it is apparent that the sureties or ex-sureties discriminated against are in no position to raise the question. They are not entitled to any relief from forfeiture under the statute as it now reads and no proceedings need be taken against them after forfeiture and payment thereunder. Secondly, if the amendment of section 1306 in 1929 be invalid the title to the money now in the treasury

of the city is vested in the municipality under the former part of the section as amended in 1927 and as continued in force in 1929, if the two provisions be severable. And lastly, the respondents are under bond to audit and pay out money entrusted to their custody only upon lawful demands. They are thus made personally interested ·in the attempted exaction under the statute. The presumption of the validity of the statute may be attacked by a litigant whenever it is material to the case.     If the statute is offensive to the Constitution it is ''no law at all''. (*Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26, 31 [12 A. L. R. 1190, 192 Pac. 1021, 1023].) We think the amendment in 1929 of section 1306 falls within that category and is invalid. But the provisions of the amendment are clearly severable from the provisions of the section in force prior to the amendment and continued in force, for there is no indication in the statute or otherwise that the legislature would not have left the section as enacted in 1927 undisturbed if its attempt to relieve some arbitrarily selected sureties from the rigors of a forfeiture had not been undertaken. We are not apprehensive, therefore, that bail bonds in pending proceedings will be jeopardized by the determination herein, as suggested by counsel for the petitioner.

The peremptory writ is denied and the alternative writ is discharged.

Richards, J., Waste, C. J., Curtis, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.