[No. B218293. Second Dist., Div. Three. Feb. 14, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY,
Defendant and Appellant.

930

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, and Joanne Nielsen, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Defendant and appellant Indiana Lumbermens Mutual Insurance Company (the Surety) appeals an order denying its motion to set aside a summary judgment on a forfeited bail bond.[1]

The Surety posted a bond for criminal defendant Hassan Saleh's release from custody. The trial court signed a Penal Code section 1275.1 order placing a hold on Saleh's release, pending a hearing to establish the bail funds were not feloniously obtained.[2] Saleh erroneously was released from custody without the section 1275.1 hearing having been held.

At the subsequent section 1275.1 hearing, the trial court stated it was "not satisfied" the source of funds for the bail premium was legitimate, but continued the matter for further proceedings and allowed Saleh to remain free on bond. Thereafter, Saleh failed to appear, at which time the trial court declared the bond forfeited. The trial court subsequently entered summary judgment on the forfeited bond and later denied the Surety's motion to set aside the summary judgment.

The Surety appeals, contending the bond was not subject to forfeiture because the release of Saleh from custody in violation of section 1275.1 rendered the bail bond void.

We affirm. Guided by *People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1 [22 Cal.Rptr.3d 375] (*Accredited*), discussing the effect of a court's noncompliance with section 1275 on a surety's liability, we conclude noncompliance with section 1275.1 does not operate to exonerate a surety's liability and is not a defense to forfeiture of the bail bond.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 2007, criminal defendant Hassan Saleh (Saleh) was arraigned and pled not guilty to nine counts of sale of counterfeit mark. (§ 350, subd. (a)(2).) Bail was set at $200,000 and Saleh was remanded to custody.

On May 11, 2007, the trial court signed an order placing a hold on Saleh's release, pending a hearing to establish the bail funds were not feloniously obtained. A bail review hearing was scheduled for May 24, 2007.

---

[1] An appeal lies from an order denying a motion to vacate a summary judgment in a bail forfeiture proceeding. (See, e.g., *People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1304 [12 Cal.Rptr.2d 343]; *People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758, 760 [7 Cal.Rptr.3d 887].)

[2] All further statutory references are to the Penal Code, unless otherwise specified.

On May 24, 2007, the Surety executed a $200,000 bond for Saleh's release from custody. Also on May 24, 2007, at the request of Saleh's counsel, the bail review hearing was taken off calendar. On May 25, 2007, the sheriff erroneously released Saleh from custody without the section 1275.1 hearing having been held.

Saleh appeared in court on May 31, 2007. Saleh's counsel was not prepared that day to proceed with the section 1275.1 hearing, and the matter was continued.

The section 1275.1 hearing proceeded on June 25, 2007. The People did not dispute the $200,000 bail, secured by a lien on real property, came from a legitimate source. The sole issue was the source of the $20,000 bail premium. After hearing the evidence, the trial court stated it was "not satisfied" the source of the funds for the bail premium was legitimate. The trial court continued the matter to July 6, 2007, for further proceedings, and allowed Saleh to remain free on bond.

On July 6, 2007, Saleh failed to appear and the trial court declared the bail forfeited. Notice of forfeiture was sent to the Surety that same day. The 185-day forfeiture period was set to expire on January 7, 2008, and thereafter was extended.

On October 6, 2008, summary judgment was entered on the forfeited bond. On October 7, 2008, the clerk served notice of entry of judgment on forfeited bond and demand for payment.

On December 16, 2008, the Surety filed a motion to vacate the summary judgment, discharge the forfeiture and exonerate bail. The Surety contended it was entitled to relief because the bond was void.

The Surety argued, "this bond was posted in violation of a hold properly issued by the court pursuant to [section] 1275.1. That section prohibits the release of a defendant on bail until the defendant proves that the moneys used are not feloniously obtained. Here the jail improperly released the defendant in violation of the 1275.1 hold. The trial court allowed the defendant to remain out on this improperly posted bail. Even after conducting a [section] 1275.1 hearing where the court found that it was not satisfied that the source of the defendant's premium was from a legal source, the defendant was allowed to remain on the improperly posted bond. [¶] This bond was posted

in violation of the prohibitions of [section] 1275.1 and the court was without jurisdiction to allow the defendant to remain on this bond prior to complying with the provisions of that statute."

In opposition, the People argued, inter alia, Saleh's release in violation of section 1275.1 did not affect the court's jurisdiction to forfeit bail or to enter summary judgment.

On June 19, 2009, following the completion of supplemental briefing, the matter came back on for hearing. The trial court concluded the court was not obligated to correct the sheriff's error in prematurely releasing Saleh by taking Saleh back into custody. Rather, the court had discretion to allow Saleh to remain free on bail pending resolution of the section 1275.1 issue, even though "we can all see in hindsight that it was not great discretion."

On August 14, 2009, the Surety filed notice of appeal from the June 19, 2009 order denying its motion to vacate the summary judgment and discharge the forfeiture.

## CONTENTIONS

The Surety contends the release of Saleh in violation of section 1275.1 rendered the bail bond void and not subject to forfeiture.

## DISCUSSION

1. *Surety's liability is not tied to compliance with section 1275.1.*

a. *Overview.*

Section 1275.1 (added by Stats. 1998, ch. 726, § 2, p. 4784) states in relevant part: "(a) *Bail, pursuant to this chapter, shall not be accepted unless a judge or magistrate finds that no portion of the consideration, pledge, security, deposit, or indemnification paid, given, made, or promised for its execution was feloniously obtained.* [¶] (b) A hold on the release of a defendant from custody shall only be ordered by a magistrate or judge if any of the following occurs: [¶] (1) A peace officer, as defined in Section 830, files a declaration executed under penalty of perjury setting forth probable cause to believe that the source of any consideration, pledge, security, deposit, or indemnification paid, given, made, or promised for its execution was feloniously obtained. [¶] (2) A prosecutor files a declaration executed under penalty of perjury setting forth probable cause to believe that the source of any consideration, pledge, security, deposit, or indemnification paid, given, made, or promised for its execution was feloniously obtained. . . . [¶]

(3) The magistrate or judge has probable cause to believe that the source of any consideration, pledge, security, deposit, or indemnification paid, given, made, or promised for its execution was feloniously obtained. [¶] (c) Once a magistrate or judge has determined that probable cause exists, as provided in subdivision (b), a defendant bears the burden by a preponderance of the evidence to show that no part of any consideration, pledge, security, deposit, or indemnification paid, given, made, or promised for its execution was obtained by felonious means. *Once a defendant has met such burden, the magistrate or judge shall release the hold previously ordered and the defendant shall be released under the authorized amount of bail.*" (Italics added.)

Here, on May 11, 2007, the trial court signed an order placing a hold on Saleh's release, pending a hearing to establish the bail funds were not feloniously obtained. On May 25, 2007, the sheriff erroneously released Saleh from custody on the bail bond without the section 1275.1 hearing having been held. At the section 1275.1 hearing on June 25, 2007, the trial court stated it was "not satisfied" the source of funds for the bail premium was legitimate. The trial court continued the matter to July 6, 2007, for further proceedings, and allowed Saleh to remain free on bond. On July 6, 2007, Saleh failed to appear, at which time the trial court declared the bond forfeited.

The Surety contends the bond was not subject to forfeiture because the release of Saleh from custody in violation of section 1275.1 rendered the bail bond void. There appears to be no case law discussing the consequence of noncompliance with section 1275.1. However, the analysis in *Accredited, supra*, 125 Cal.App.4th 1, pertaining to section 1275, is instructive and applicable here.

> b.    *The* Accredited *decision.*

In *Accredited*, the surety therein, Accredited, contended the lower court's failure to consider the statutory factors in section 1275 before reducing a defendant's bail operated to exonerate its liability on the bond.[3] (*Accredited, supra*, 125 Cal.App.4th at p. 4.)

---

[3] Section 1275 states in relevant part: "(a) In setting, reducing, or denying bail, *the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or hearing of the case.* The public safety shall be the primary consideration. [¶] In considering the seriousness of the offense charged, the judge or magistrate shall include consideration of the alleged injury to the victim, and alleged threats to the victim or a witness to the crime charged, the alleged use of a firearm or other deadly weapon in the commission of the crime charged, and the alleged use or possession of controlled substances by the defendant." (Italics added.)

In that case, the lower court reduced bail from $2 million to $20,000 pursuant to a stipulation between the People and the defense, without making any findings under section 1275. (*Accredited, supra*, 125 Cal.App.4th at p. 4.) The defendant subsequently failed to appear, and the court declared the bail forfeited. (*Id.* at p. 6.)

Accredited, the surety, contended its liability on the bond was "discharged, because the trial court failed to comply with section 1275 in that it reduced bail from $2 million to $20,000 without considering the amount of cocaine involved; that defendant had a prior drug-related conviction; he was facing a maximum of 25 years in prison; and to avoid this sentence, he had to perform his informant duties to the satisfaction of law enforcement." (*Accredited, supra*, 125 Cal.App.4th at p. 6.)

The *Accredited* court disagreed, concluding "[n]oncompliance with section 1275 is not a cognizable ground for exoneration nor a defense to forfeiture of a bail bond." (*Accredited, supra*, 125 Cal.App.4th at p. 6.) It explained: "Accredited does not assert any statutory defenses to forfeiture. It does not deny it received proper notice of forfeiture, nor does it claim [the defendant's] nonappearance was due to the fact that he was deceased or was otherwise permanently or temporarily unable to appear because of illness, insanity, or detention by military or civil authorities. (See, e.g., § 1305, subds. (d)(1) & (e)(1).) Rather, its defense is based on the claimed failure of the trial court to comply with section 1275. *We have found no authority, and Accredited has cited none, which recognizes this as a valid nonstatutory defense to forfeiture, and we decline to create such a defense.*" (*Accredited, supra*, 125 Cal.App.4th at p. 6, italics added.)

*Accredited* recognized, "[t]he unambiguous purpose of section 1275 is public safety. 'In setting, reducing, or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or hearing of the case. The public safety shall be the primary consideration.' (§ 1275, subd. (a).)" (*Accredited, supra*, 125 Cal.App.4th at p. 7.) However, the trial court's failure to comply with section 1275 did not operate to exonerate the surety's liability on the bond. (*Accredited, supra*, at pp. 6–7.)

*Accredited* concluded "the failure of the judicial officer . . . to comply with section 1275 is unrelated to the subject of bail bonds, does not operate to exonerate a surety's liability, and is not a defense to forfeiture of the bail bond." (*Accredited, supra*, 125 Cal.App.4th at p. 8.)

### c. Accredited*'s rationale is equally applicable to section 1275.1.*

■ By a parity of reasoning, noncompliance with section 1275.1 does not operate to exonerate the Surety's liability on the bond. The sheriff's release of Saleh, notwithstanding the hold imposed by the court, and the trial court's allowing Saleh to remain free on bail pending a determination as to whether the funds for the $20,000 bail premium had been feloniously obtained, has no bearing on the Surety's liability.

■ While section 1275.1 is a separate statute, both sections 1275 and 1275.1 set forth procedures to be followed by the criminal court in relation to the release of a defendant on bail, and neither section makes any mention of bail forfeiture or exoneration. The purpose of section 1275 is to ensure public safety. (*Accredited, supra*, 125 Cal.App.4th at p. 7.) The purpose of section 1275.1 is to ensure release on bail is not secured by way of feloniously obtained funds. However, the failure to comply with these statutes does not inure to the benefit of the surety. We conclude noncompliance with section 1275.1 does not operate to exonerate a surety's liability and is not a defense to forfeiture of the bail bond.

### 2. *The Surety's asserted lack of knowledge of the bail hold must be laid to its own neglect in not checking the superior court docket and file.*

The motion to vacate the summary judgment, discharge forfeiture and exonerate bail was supported by the declaration of bail agent Demetria Barnes (Barnes), who stated: "On or about May 9, 2007 I was contacted to post bail for a defendant Hassan Saleh in the amount of $200,000. In preparing to post this bond I checked the Los Angeles County Sheriff's Department web page to see if there were any holds placed against the defendant. [¶] On May 18, 2007, I printed out an internet booking details which showed a $200,000 bail for the defendant and no holds. Exhibit 'E' Inmate Information Booking Details. [¶] After receiving a notice of forfeiture on this case I immediately began an investigation to locate and apprehend the defendant. [¶] On or about December 28, 2007, I appeared for a motion to extend time. At that time I met Deputy District Attorney Ron Goudy. Mr. Goudy told me that there had been a 1275 hold on the defendant and that the jail was not supposed to have released the defendant from custody. This was the first time that I learned that the defendant was released in violation of a Penal Code section 1275.1 hold. I was not given notice or an opportunity to be heard at the 1275.1 hearings. [¶] *As a business practice I rarely write bonds that have Penal Code § 1275.1 holds. I have learned that these bonds are of higher risk. When I do post bonds for cases with a 1275.1 hold I require additional collateral to protect myself against this risk. Because I was*

*not aware that this bond had a 1275.1 hold I did not take these additional procedures.* [¶] Had I been informed of the hearings on the 1275.1 hold I would have appeared in court and either demanded additional collateral from the defendant, or surrendered the defendant on the bond." (Italics added.)

A similar argument was made in *Accredited*. There, the surety contended "it would not have entered into the bail bond contract with the State if it had known all the facts concerning the reduction of [the defendant's] bail, and that the State breached the bail contract by failing to disclose these facts." (*Accredited, supra,* 125 Cal.App.4th at p. 8.)

■ *Accredited* rejected the argument, noting that "[i]f Mr. Andriole [(the bail agent)] had reviewed the record of the plea in this case, he would have known the court accepted the People's agreement to reduce [the defendant's] bail without a section 1275 hearing. He made no inquiry, however, and the trial court aptly found that Accredited assumed the risk, because if Mr. Andriole had conducted a routine investigation of the information that was available, he would have learned the true nature of the charges. [¶] *Accredited's asserted lack of knowledge thus must be laid to its own neglect in not checking the record or the court file, and its failure to do so is not chargeable to the State* unless the State made it impossible for Accredited to check, which it does not claim happened. In the absence of a showing of a duty to disclose, there can be no fraud upon which exoneration of liability on the bail bond contract can be based." (*Accredited, supra,* 125 Cal.App.4th at pp. 10–11, italics added.)

Here, the Surety claimed it would not have entered into the bail contract had it known of the bail hold, which made this a high risk situation. However, had Barnes, the bail agent, reviewed the superior court docket and file, she would have readily ascertained the following: On May 11, 2007, the trial court placed a hold on the sheriff's release of Saleh on bail, pending a determination as to whether the consideration was feloniously obtained. On May 22, 2007, the matter was set for a bail review hearing on May 24, 2007, regarding the hold on Saleh's release.

Thus, it was clear from the record that a section 1275.1 hold had been placed on Saleh's release. Nonetheless, on May 24, 2007, the bail agent executed a $200,000 bond for Saleh's release. The Surety's executing a bond in the face of the bail hold must be laid to a lack of diligence in not checking the court record and in limiting its inquiry to the Internet booking details.

In sum, the Surety's asserted lack of knowledge of the section 1275.1 hold must be laid to its own neglect and is not chargeable to the county.

## DISPOSITION

The order denying the Surety's motion to set aside the summary judgment on the forfeited bond is affirmed. The county shall recover its costs on appeal.

Croskey, J., and Aldrich, J., concurred.